UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| WILLIAM S.,<br>        Plaintiff, | )<br>)<br>) |
| v. | ) CAUSE NO.: 2:21-CV-96-JVB<br>) |
| KILOLO KIJAKAZI, Acting Commissioner<br>of the Social Security Administration,<br>        Defendant. | )<br>)<br>)<br>) |

## OPINION AND ORDER

Plaintiff William S. seeks judicial review of the Social Security Commissioner's decision denying him disability benefits and asks this Court to remand the case. For the reasons below, this Court affirms the Administrative Law Judge's decision.

## PROCEDURAL BACKGROUND

Plaintiff applied for disability insurance benefits and supplemental social security income benefits on April 22, 2019. In his application, Plaintiff alleged that he became disabled on August 2, 2018. (AR 10). Plaintiff last met the insured status requirements of the Social Security Act on December 31, 2019. (AR 12). After a hearing in 2020, the Administrative Law Judge ("ALJ") found that Plaintiff suffers from the severe impairments of failed back syndrome, bilateral greater trochanteric bursitis, tendinitis of both knees, COPD, obesity, bipolar disorder, intermittent explosive disorder, anxiety, and neurocognitive disorder. (AR 13). The ALJ also found that Plaintiff suffered from the non-severe impairment of headaches and seizures. (AR 17). The ALJ found that Plaintiff is unable to perform any past relevant work. (AR 23). However, the ALJ found that Plaintiff could perform other work that exists in significant numbers in the national economy. (AR 24). Therefore, the ALJ found him to be not disabled from August 2, 2018, through the date

of the decision. (AR 24). This decision became final when the Appeals Council denied Plaintiff's request for review. (AR 1).

## STANDARD OF REVIEW

This Court has authority to review the Commissioner's decision under 42 U.S.C. § 405(g). The Court will ensure that the ALJ built an "accurate and logical bridge" from evidence to conclusion. *Thomas v. Colvin*, 745 F.3d 802, 806 (7th Cir. 2014). This requires the ALJ to "confront the [plaintiff's] evidence" and "explain why it was rejected." *Thomas v. Colvin*, 826 F.3d 953, 961 (7th Cir. 2016). The Court will uphold decisions that apply the correct legal standard and are supported by substantial evidence. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Evidence is substantial if "a reasonable mind might accept [it] as adequate to support [the ALJ's] conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

## DISABILITY STANDARD

The Commissioner follows a five-step inquiry in evaluating claims for disability benefits under the Social Security Act:

> (1) Whether the claimant is currently employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment is one that the Commissioner considers conclusively disabling; (4) if the claimant does not have a conclusively disabling impairment, whether he can perform his past relevant work; and (5) whether the claimant is capable of performing any work in the national economy.

*Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2012). The claimant bears the burden of proof at every step except step five. *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000).

## ANALYSIS

Plaintiff offers four arguments to support his request for remand: that the adjudication of his claim is constitutionally defective, that the ALJ erred in analyzing his mental impairments, that

2

the ALJ erred in evaluating his subjective symptoms, and that the ALJ erred in the RFC by failing to fully account for his physical impairments.

### 1. Separation of Powers

Plaintiff asserts that the adjudication of his claim was constitutionally defective because 42 U.S.C. § 902(a)(3) violates the separation of powers by limiting the President to removing the Commissioner for cause and prohibiting the President from removing the Commissioner without cause. *See Seila Law LLC v. Consumer Financial Protection Bureau*, 140 S. Ct. 2183 (June 20, 2020) (finding a regulation unconstitutional where the single head of an executive agency serves for a longer term than the President and can only be removed from the position for cause). The Commissioner concedes that the removal clause in U.S.C. § 902(a)(3) is an unconstitutional removal clause, but the Commissioner asserts that this defect does not, on its own, support setting aside the denial of benefits and remanding the decision. The Court agrees with the Commissioner.

While the Supreme Court in *Seila Law* held that removal clauses in statutes such as 42 U.S.C. § 902(a)(3) are unconstitutional, a majority of the justices found that the removal clause was severable from the other provisions in the regulations. *See Seila Law*, 140 S. Ct. at 2207-11, 2245. Therefore, the agency "may continue to exist and operate notwithstanding Congress's unconstitutional attempt to insulate the agency's Director from removal by the President." *Id.* at 2207-08; *see also Collins v. Yellin*, 141 S. Ct. 1761, 1788 n. 2 (2021) (holding that "[s]ettled precedent also confirms that the unlawfulness of the removal provision does not strip the Director of the power to undertake the other responsibilities of his office."). As the Social Security Act does not prohibit severing the removal clause, the removal clause's unconstitutionality does not invalidate the former Commissioner's actions, "including delegating authority to make benefits

3

determinations or ratifying such delegations." *Bowers v. Comm'r of Soc. Sec.*, 2022 WL 33401, at *7 (S.D. Ohio Jan. 4, 2022).

Moreover, Plaintiff must show that the unconstitutional removal clause resulted in some unlawful action which caused harm. "[I]dentifying some conflict between the Constitution and a statute is not enough. They must show that the challenged Government action at issue . . . was, in fact, unlawful." *Collins*, 141 S. Ct. at 1790 (Thomas, J., concurring). Plaintiff has not alleged any actual harm, and it is difficult to imagine a scenario in which the unconstitutional removal clause could cause him actual harm. *See Robinson v. Kijakazi*, 2022 WL 443923, at *6 (E.D. Wis. Feb. 14, 2022).

Finally, even if all of Plaintiffs constitutional arguments were valid, the facts don't support his argument. The ALJ who adjudicated Plaintiff's claim was appointed by an Acting Commissioner, and the Acting Commissioner enjoys no statutory tenure protection. *See* 42 U.S.C. § 902(b)(4); *Collins*, 141 S. Ct. at 1783. Acting Commissioners are removeable at will, and therefore Plaintiff's constitutional claims fail by the facts alone. The unconstitutional removal clause had no impact on the ALJ's appointment, and therefore Plaintiff cannot show that the removal clause rendered the appointment of this ALJ unconstitutional.

**2. Mental Health Treatment**

Plaintiff asserts that the ALJ mischaracterized his mental health treatment as "work," and that the ALJ failed to acknowledge his struggles within this setting. The record indicates that Plaintiff spent time "working" at "the clubhouse." (AR 19, 748). New Beginnings Clubhouse, or "the clubhouse," is an affiliate of Regional Mental Health.[1] The clubhouse is a psychosocial rehabilitation service that provides support to people with mental illness through opportunities for

---

[1] https://nwi.life/article/new-beginnings-clubhouse-to-expand-its-merrillville-office/ (last visited May 12, 2022).

4

work, wellness, and socialization.[2] Plaintiff regularly attended the clubhouse for three to five hours at a time, completing jobs and tasks while socializing with other clubhouse members. (AR 741, 748, 750, 756, 760-61, 763, 764-65, 767, 769, 771). While at the clubhouse, Plaintiff performed tasks such as vacuuming, working as a supply clerk, working at the reception desk, running the recycling unit, cleaning the community room, sweeping, maintenance, and cooking. *Id.*

The ALJ referenced Plaintiff's time at the clubhouse several times throughout the decision. The ALJ noted that Plaintiff "worked 4.5 hours at a clubhouse" and described treatment notes from the clubhouse in detail. (AR 19-20). The ALJ then discussed the treatment notes from the clubhouse in finding that Plaintiff's physical complaints were not as severe as he alleges, finding that his ability to perform manual tasks for up to five hours at a time is inconsistent with his complaints. (AR 21). The ALJ also relied on clubhouse treatment notes to support the paragraph B findings. (AR 22). Plaintiff asserts that the ALJ "fundamentally misunderstood" how the clubhouse functions. (Pl.'s Br. at 8, ECF No. 16). Plaintiff alleges that the ALJ failed to understand that the clubhouse is a form of treatment, and instead impermissibly considered it work. However, there is no indication in the decision that the ALJ considered that Plaintiff's time at the clubhouse was anything other than treatment.

The ALJ discusses the clubhouse as part of Plaintiff's mental health treatment. While the ALJ does occasionally discuss "working" at the clubhouse, the treatment notes themselves use this wording, and there is no indication that the ALJ considered the work anything other than treatment. (AR 19-22, 741, 748, 750, 756, 760-61, 763, 764-65, 767, 769, 771). The ALJ merely discussed the type of tasks Plaintiff did at the clubhouse, as well as the statements regarding his mental health treatment. (*Id.*) The ALJ did not impermissibly consider the clubhouse to be employment, nor did

---

[2] https://clubhouse-intl.org/wp-content/uploads/2020/09/CI_GatefoldBrochure-Digital_FINAL-Web_09-08-20.pdf (last visited May 12, 2022).

the ALJ mischaracterize Plaintiff's time at the clubhouse. Plaintiff provides no evidence that the ALJ improperly categorized his treatment at the clubhouse as employment.

### 3. Subjective Symptoms

Relatedly, Plaintiff asserts that the ALJ impermissibly used Plaintiff's time at the clubhouse to find that his subjective symptoms were less limiting than he alleges. An ALJ's subjective symptom analysis will be afforded "considerable deference" and will be overturned only if it is "patently wrong." *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006). An ALJ must consider a claimant's statements about his or her symptoms, including pain, and how these symptoms affect the claimant's activities of daily living and ability to work. 20 C.F.R. § 404.1529(a). ALJs must weigh the subjective complaints, the relevant objective medical evidence, and any other evidence of the following:

(1) The individual's daily activities;
(2) Location, duration, frequency, and intensity of pain or other symptoms;
(3) Precipitating and aggravating factors;
(4) Type, dosage, effectiveness, and side effects of any medication;
(5) Treatment, other than medication, for relief of pain or other symptoms;
(6) Other measures taken to relieve pain or other symptoms;
(7) Other factors concerning functional limitations due to pain or other symptoms.

*See* 20 C.F.R. § 404.1529(c)(3); *see also* SSR 16-3p, 2017 WL 5180304, at *3 (Oct. 25, 2017). The "subjective symptom evaluation is not an examination of an individual's character." SSR 16-3p, 2017 WL 5180304, at *2.

Plaintiff asserts that the ALJ erred by relying on his time at the clubhouse to find his subjective symptoms to be less severe than he alleges. Specifically, Plaintiff alleges that the ALJ misinterpreting the clubhouse as employment skewed the analysis of his subjective symptoms. However, as discussed above, the ALJ did not err in her discussion and evaluation of Plaintiff's treatment and work at the clubhouse. Plaintiff further asserts that the ALJ erred in noting that treatment notes describe him as "pleasant" without explaining how that reflected his ability to

6

work a full-time job. (AR 22). This is not an accurate account of the ALJ's decision. The ALJ found that Plaintiff has moderate limitations in interacting with others, and she noted that he was described as pleasant and cooperative in the medical evidence. (AR 22). However, this was not the only evidence on which the ALJ relied. The ALJ listed multiple other pieces of evidence to support her finding that Plaintiff has a moderate limitation in interacting with others, including his ability to work with others in a team setting, his active engagement with other people at the clubhouse, his improvement with therapy and medication, and the evidence showing good rapport with providers. (AR 22). The ALJ did not improperly rely on evidence of Plaintiff being described as "pleasant" in her decision.

Plaintiff also argues that the ALJ failed to consider how his daily activities were limited or his use of strong narcotic pain medication. (Pl.'s Br. at 15, ECF No. 16). Plaintiff does not elaborate on this argument, and he does not explain how his daily activities were further limited or the types and dosage of medications he is on. Plaintiff does not provide any evidence in the medical record that support his claim that the ALJ ignored evidence regarding how he completes daily activities. Underdeveloped arguments such as these are waived. *Krell v. Saul*, 931 F.3d 582, 586 n.1 (7th Cir. 2019). Plaintiff repeatedly argues that the ALJ did not explain her decision using the regulatory factors, but he fails to assert any evidence that would support the need for a discussion of those regulatory factors. Plaintiff only cites to his function report, which does not contradict the ALJ's findings. Plaintiff stated in his function report that he has no problems with his personal care, and that he can do his own laundry and put dishes in the dishwasher with breaks in between. (AR 293). Plaintiff further stated that he enjoys watching TV, and that he used to play softball and go bowling, but he cannot do those things anymore. (AR 295). The ALJ noted that Plaintiff does laundry and loads dishes into the dishwasher, and that he enjoys watching television and bowls

three times a week. (AR 16). The only discrepancy between these is that the ALJ failed to acknowledge that Plaintiff does not bowl any longer. However, the ALJ does not rely on Plaintiff's ability to bowl to contradict his subjective symptoms. The ALJ merely notes it in passing in discussing Plaintiff's medical history. Plaintiff provides no other evidence that he is further limited in his daily activities, and there is no evidence that the ALJ erred in failing to identify any further limitations in his daily activities.

Similarly, Plaintiff points to a single medical note indicating the number of medications he is on to support his argument that the ALJ failed to consider his medications in the subjective symptom analysis. (AR 466). However, only one of the many medications listed is for chronic pain (Nucynta), and that medication is listed as being prescribed in April 2018, with the majority of the other medications on the list being prescribed or updated in March 2019. (AR 466). Plaintiff provides no evidence that he is on heavy narcotics for pain relief that required discussion from the ALJ, and it is not the Court's job to locate evidence to support a party's contentions. *Hildreth v. Butler*, 960 F.3d 420, 429 (7th Cir. 2020); *David R. v. Saul*, 2020 WL 6565244, at *8 (N.D. Ill. Nov. 9, 2020). Plaintiff bears the burden of providing the evidence to prove disability, and it is not the job of the court to search through the record and do the work of Plaintiff's counsel. *Kreg Therapeutics, Inc. v. Vital Go, Inc.*, 919 F.3d 405, 415 (7th Cir. 2019); *Clifford*, 227 F.3d at 868. Because Plaintiff has not met his burden of providing evidence to support his arguments regarding his subjective symptoms, he has waived those arguments. Furthermore, the two pieces of evidence that Plaintiff cites (without explanation), do not support his claims.

4. **Physical RFC**

Plaintiff asserts that the ALJ erred in assessing his RFC by failing to account for all of his physical limitations. At step four of the sequential evaluation, an ALJ must assess a claimant's

RFC. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004) ("The RFC is an assessment of what work-related activities the claimant can perform despite her limitations."); *see also* 20 C.F.R. § 404.1545(a)(1). In evaluating a claimant's RFC, an ALJ is expected to take into consideration all of the relevant evidence, including both medical and non-medical evidence. *See* 20 C.F.R. § 404.1545(a)(3). According to the regulations:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies of ambiguities in the evidence in the case record were considered and resolved.

SSR 96-8p, 1996 WL 374184, at *7. Although an ALJ is not required to discuss every piece of evidence, she must consider all of the evidence that is relevant to the disability determination and provide enough analysis in her decision to permit meaningful judicial review. *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000); *Young*, 362 F.3d at 1002. In other words, the ALJ must build an "accurate and logical bridge from the evidence to [her] conclusion." *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002). The ALJ must also consider the combination of impairments, as the impairments in combination "might well be totally disabling" even if the impairments alone may not be serious. *Martinez v. Astrue*, 630 F.3d 693, 698 (7th Cir. 2011).

Plaintiff asserts that the ALJ faced an evidentiary deficit by failing to find any medical opinion in the record persuasive. The ALJ found Dr. Villarroel's opinion to be not persuasive, noting that Plaintiff's ability to perform exertional activities at the clubhouse contradicted his opinion regarding Plaintiff's physical impairments. (AR 20). The ALJ also found the state agency medical consultants' opinions were not persuasive, as Plaintiff's need for a cane would limit him

9

to sedentary work instead of light work. (AR 21). Plaintiff argues that the ALJ erred in failing to obtain or rely on evidence to fill the deficit created by not relying on any medical opinion. However, the ALJ is "not required to rely entirely on a particular physician's opinion or choose between the opinions of any of the claimant's physicians" in making the RFC finding. *Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007). As long as the ALJ identified evidence in the record to support the RFC determination, the court should affirm. *Schloesser v. Berryhill*, 870 F.3d 712, 717 (7th Cir. 2017).

Here, the ALJ provided multiple pages of evidence to support her decision, and she provided analysis of the evidence to build the requisite logical bridge from the evidence to her conclusion. (AR 16-18, 20-22). Even in discussing the medical opinions, the ALJ explained how medical evidence, such as the need for a cane for ambulation, altered the RFC. (AR 20-21). The ALJ did not impermissibly reject all of the medical opinions and instead rely on her own lay opinion in determining the RFC. Rather, the ALJ properly analyzed the evidence and the medical opinions in determining Plaintiff's RFC.

Finally, Plaintiff asserts that the ALJ failed to consider Plaintiff's testimony that he cannot sit for long periods in finding that Plaintiff could perform sedentary work. Plaintiff cites to multiple cases regarding the possibility that obesity in combination with back impairments might make sitting for long periods difficult. *See Browning v. Colvin*, 766 F.3d 702, 707 (7th Cir. 2014); *Liggins III v. Colvin*, 593 Fed.Appx 564 (7th Cir. 2015). However, Plaintiff has provided no evidence that his obesity or his back impairments affected his ability to sit and perform sedentary work. Plaintiff's argument is speculative in nature, asserting that it's possible for obesity and back impairments to affect the ability to perform sedentary work. Plaintiff did testify to having trouble with sitting for long periods of time. (AR 72, 77). However, the ALJ supported her finding that

Plaintiff's subjective symptoms are not as limiting as he alleges. (AR 15-17). The ALJ noted that although Plaintiff required a cane for ambulation, his strength was normal and straight leg raises were negative throughout the record. (AR 17-18). The ALJ also noted that Plaintiff reported up to 75% pain relief in November 2019 and in August 2020. (AR 18). Plaintiff has provided no evidence that he required further limitations as a result of his obesity and back impairment. The ALJ properly supported her decision with evidence in the record.

## CONCLUSION

The ALJ supported her decision with substantial evidence in the medical record and did not err in analyzing Plaintiff's mental impairments, subjective symptoms, or physical RFC. For these reasons, the Court **AFFIRMS** the ALJ's decision.

SO ORDERED on May 17, 2022.

s/ Joseph S. Van Bokkelen
JOSEPH S. VAN BOKKELEN, JUDGE
UNITED STATES DISTRICT COURT